**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| G.N. on behalf of L.N.,<br><br>Plaintiff,<br><br>v.<br><br>SOUTH AMBOY CITY BOARD OF EDUCATION,<br><br>Defendant. | Civil Action No. 26-05456 (GC) (JBD)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon *pro se* Plaintiff G.N.'s Motion for a Preliminary Injunction.[1] (ECF No. 21.) Defendant South Amboy City Board of Education (the Board) opposed, (ECF No. 23), and Plaintiff replied, (ECF No. 24). In response to Orders from the Court, (ECF Nos. 25, 30), the parties also submitted supplemental briefing addressing why the stay-put provision under 20 U.S.C. § 1415(j) should apply rather than 20 U.S.C. § 1414(d)(2)(C)(i)(I), (ECF Nos. 27, 28), and whether the Court needs to hold an evidentiary hearing to resolve any factual disputes regarding a July 14, 2026 Individualized Education Program (IEP) meeting, (ECF Nos. 31, 32). The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil

[1] While Plaintiff styles the Motion as an "Application for an Order to Show Cause," the Court construes it as a Motion for a Preliminary Injunction as Plaintiff seeks an order directing the Board "to maintain L.N.'s placement [at Rock Brook] during the pendency of this appeal and to refrain from changing her placement from Rock Brook to an in-district program without Plaintiff's informed written consent." (ECF No. 21-1 at 16.)

Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Plaintiff's Motion is **GRANTED.**

## I. BACKGROUND[2]

This case arises under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq.*, and specifically under its "stay-put" provision, 20 U.S.C. § 1415(j). The dispute centers on where L.N., a disabled minor, should attend school while her mother, G.N.,[3] challenges a proposed change in her educational placement. The parties are before this Court on an interlocutory appeal from the March 27, 2026 placement decision by the New Jersey Office of Administrative Law.[4]

The Board is a local educational agency (LEA) that operates the South Amboy School District (the District) within Middlesex County, New Jersey, and receives federal funds in connection with its obligations to educate students with disabilities pursuant to the IDEA. L.N. is a seventeen-year-old with a pervasive development disorder, seizure disorder, and autism spectrum

---

[2] The Court draws upon Plaintiff's Complaint as well as the parties' briefs and attached exhibits for these facts. Courts have consistently held that the Federal Rules of Evidence do not apply at the preliminary injunction stage. Accordingly, a court may rely on hearsay evidence that would not be admissible at trial. *R.B. ex rel. Parent v. Mastery Charter Sch.*, 762 F. Supp. 2d 745, 747 n.3 (E.D. Pa. 2010), *aff'd sub nom. R.B. v. Mastery Charter Sch.*, 532 F. App'x 136 (3d Cir. 2013). The Court agrees with other courts that have adopted the same general standards governing preliminary injunctions in the stay-put context. *See id.*

[3] G.N. is bringing this appeal on L.N.'s behalf.

[4] This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(3)(A). Additionally, courts in the Third Circuit "accept jurisdiction of stay put disputes, and the Court of Appeals has expressed no concern about the jurisdictional basis." *R.S. v. Somerville Bd. of Educ.*, Civ. No. 10-4215, 2011 WL 32521, at *7 (D.N.J. Jan. 5, 2011).

disorder whose family moved to South Amboy and enrolled in the District in spring 2025. (ECF No. 1 at 3; ECF No. 21-1 at 3-4.)[5]

L.N. was previously enrolled in the East Windsor Township School District and attended Rock Brook School, a "State-approved private school for children with disabilities," pursuant to an IEP developed in that school district.[6] (ECF No. 21-1 at 4; ECF No. 23 at 2.) Upon L.N.'s move to the District, it is undisputed that the District agreed to continue L.N.'s placement at Rock Brook for the remainder of the 2024-2025 school year. (ECF No. 27 at 2; ECF No. 28 at 3.) After L.N. enrolled in the District, the District developed a new IEP for her, dated May 14, 2025, that provided for L.N.'s transition to South Amboy High School in September 2025 for the 2025-2026 school year. (ECF No. 21-1 at 4; ECF No. 23 at 2.)

G.N. filed a due process petition challenging the District's May 14, 2025 IEP. (ECF No. 1 at 3; ECF No. 21-1 at 4; ECF No. 23 at 2.) A hearing was held before an Administrative Law Judge (ALJ) on January 21, 2026. (ECF No. 21-1 at 4.) On March 27, 2026, the ALJ issued a Final Decision and Order finding that South Amboy High School afforded L.N. a "free appropriate public education" and dismissing the petition. (*Id.*; ECF No. 23 at 2; ECF No. 1-2 (ALJ Decision).)

Plaintiff alleges that following the ALJ's decision, the District scheduled meetings to update L.N.'s IEP but Plaintiff was not provided notice of these meetings or was otherwise unavailable to attend. (ECF No. 21-1 at 4-5.) The Board represents that Plaintiff did receive notice

---

5 Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

6 School districts provide a "free appropriate public education" to disabled children "by designing and administering a program of individualized instruction that is set forth in an Individualized Education Plan . . . . The IEP must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential." *Mary T. v. Sch. Dist. of Philadelphia*, 575 F.3d 235, 240 (3d Cir. 2009) (citation modified).

of these meetings and that Plaintiff cancelled or rescheduled them, and asserts that the New Jersey Department of Education, Office of Special Education (OSE) determined that the District did not exclude Plaintiff from participation in the IEP process. (ECF No. 23 at 2-3.) On May 7 and 12, 2026, the District convened IEP meetings and updated L.N.'s IEP, placing her at South Amboy High School beginning on or about May 26, 2026. (*See* ECF No. 21-1 at 5; ECF No. 23 at 3, 9, 11.) It is undisputed that Plaintiff did not attend these meetings. (ECF No. 21-1 at 4-5; ECF No. 23 at 3.)

On May 13, 2026, Plaintiff commenced this action challenging the ALJ's Final Decision and Order. (ECF No. 1.) Plaintiff seeks an interim order that L.N. "can remain in her current program [Rock Brook] under 'stay put' until this appeal is over," and a finding that the ALJ erred in determining that South Amboy High School provides L.N. a free appropriate public education. (*Id.* at 4.) The Board contends that it was first served with the Complaint in this matter on May 28, 2026, and "[p]rior to that date, Plaintiff had not, at any time, informed the District that she had appealed, or intended to appeal, the Final Decision, and the District had not received a copy of the Complaint in this matter or received any type of notice of Plaintiff's filing of the Complaint." (ECF No. 23 at 3-4; *see also* ECF No. 4 ("Summons Returned Executed" filed by G.N. indicating service was executed on May 28, 2026)).

Meanwhile, in accordance with the May 12, 2026 IEP, L.N. began attending South Amboy High School on May 26, 2026. (ECF No. 21-1 at 5; ECF No. 23 at 3.) Plaintiff contends that this change in placement was "without parental consent" and she "had no choice but to send [L.N.] there because the Board terminated [L.N.'s] placement at Rock Brook." (ECF No. 24 at 2.)

Plaintiff alleges that on July 14, 2026, Plaintiff, who only speaks Spanish, attended an IEP meeting held by the District with the assistance of an interpreter. (ECF No. 21-1 at 6.) At the

meeting, the parties discussed "how L.N. was doing at South Amboy High School, particularly in connection with her related services (speech-language therapy, occupational therapy, and physical therapy)." (*Id.*; *see also* ECF No. 32-1 ¶ 7 (Certification of L.N.'s case manager).) It is undisputed that "[a]fter the meeting was over, and the interpreter had already hung up, the case manager presented a form to G.N. called, 'Consent to Implement Revised IEP Prior to 15 Days.'" (ECF No. 21-1 at 7; ECF No. 32-1 ¶ 6.) Plaintiff alleges that she could not read or understand this form. (ECF No. 21-1 at 7, 15.) Nonetheless, Plaintiff signed the form. (*Id.* at 7; ECF No. 23 at 6-7.) The Board asserts that Plaintiff voluntarily executed this form and by doing so, she agreed to implement the proposed IEP for services at South Amboy High School for the 2026-2027 school year and waived stay put. (ECF No. 23 at 4.)

On September 1, 2026, Plaintiff filed the present Motion seeking an order directing the Board "to maintain L.N.'s placement [at Rock Brook] during the pendency of this appeal and to refrain from changing her placement from Rock Brook to an in-district program without Plaintiff's informed written consent." (ECF No. 21-1 at 16.)

## II. LEGAL STANDARD

The IDEA "requires participating states to provide disabled children with a free and appropriate education." *Gloucester Twp. Bd. of Educ. v. E.N. on Behalf of A.N.*, Civ. No. 21-939, 2022 WL 1104848, at *1 (D.N.J. Apr. 13, 2022) (citing 20 U.S.C. § 1412(a)(1)(A)). "The premise of the IDEA is that parents and schools working together to design an IEP is the ideal way to reach the statute's goal of a [free and appropriate education] for every child." *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 117 (3d Cir. 2014). In order to accomplish this goal, the Act "establishes an elaborate procedural mechanism to protect the rights of those children." *Red Bank Bd. of Educ. v. J.Z.*, Civ. No. 15-5268, 2015 WL 4773392, at *2 (D.N.J. Aug. 13, 2015).

"Congress anticipated . . . that 'the collaborative process' may at times break down," and if it does break down, "the Act allows [a] party to respond to a stalemate in the discussions by requesting an impartial due process hearing before a state or local administrative officer." *Ridley Sch. Dist.*, 744 F.3d at 117 (quoting *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 269 (3d Cir. 2012)). During the pendency of this process, the "stay-put provision" pursuant to § 1415(j) of the IDEA applies. *See Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 863-64 (3d Cir. 1996) (citation omitted).[7] Section 1415(j) provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or [LEA] and the parents otherwise agree, the child shall remain in the then-current educational placement of the child[.]" 20 U.S.C. § 1415(j). "[T]he question of what constitutes a student's 'current educational placement' under IDEA's stay put provision is one of law." *Somerville Bd. of Educ.*, 2011 WL 32521, at *7. A student's "then-current educational placement" under § 1415(j) is "the IEP '*actually functioning* when the "stay put" is invoked.'" *Ridley Sch. Dist.*, 744 F.3d at 118 (emphasis added) (quoting *Drinker*, 78 F.3d at 867); *see also S.K. ex rel. N.K. v. Parsippany-Troy Hills Bd. of Educ.*, Civ. No. 07-4631, 2008 WL 4561512, at *14 (D.N.J. Oct. 9, 2008) ("In other words, it is generally the placement associated with the child's most recent IEP.").

The stay-put provision "serves 'in essence, as an automatic preliminary injunction,' reflecting Congress's conclusion that a child with a disability is best served by maintaining her educational status quo until the disagreement over her IEP is resolved." *Ridley Sch. Dist.*, 744 F.3d at 118 (quoting *Drinker*, 78 F.3d at 864); *see also Y.B. on behalf of S.B. v. Howell Twp. Bd. of Educ.*, 4 F.4th 196, 199-200 (3d Cir. 2021) ("[T]he Supreme Court explained that 'stay-put's'

[7] At the time of this decision the stay-put provision was codified at 20 U.S.C. § 1415(e)(3). However, the language of the provision did not change when it was moved to 20 U.S.C. § 1415(j). *Ridley Sch. Dist.*, 744 F.3d at 117.

expansive text is limited by the IDEA's purpose—to 'strip schools of the *unilateral* authority they had traditionally employed to exclude disabled students . . . from school.' " (emphasis in original) (quoting *Honig v. Doe*, 484 U.S. 305, 323 (1988))); *Davis on behalf of Davis v. D.C.*, 2023 WL 5209559, at *6 (D.C. Cir. Aug. 15, 2023) ("Section 1415(j) is only a shield to temporarily block the [d]istrict from fundamentally changing a student's educational placement; it is not a 'sword to effectuate affirmative remedies.'"). The plaintiff need not satisfy the traditional requirements for a preliminary injunction; instead, "an injunction under the stay-put provision is only available where the [LEA] proposes or effects a change in a student's educational placement." *Mastery Charter Sch.*, 762 F. Supp. 2d at 756 (citation modified). The court must identify the student's current educational placement at the time the stay-put provision was invoked and determine whether the LEA effected a change in that placement in contravention of the stay-put provision, entitling the student to relief. *Id.* at 756-57; *Drinker*, 78 F.3d at 864.

However, when parents unilaterally relocate their child, the stay-put provision in § 1415(j) does not apply. *J.F. v. Byram Twp. Bd. of Educ.*, 629 F. App'x 235, 237 (3d Cir. 2015). Instead, § 1414(d)(2)(C)(i)(I) of the IDEA provides that "the [LEA] shall provide such child with a free appropriate public education, including services comparable to those described in the previously held IEP, in consultation with the parents until such time as the [LEA] adopts the previously held IEP or develops, adopts, and implements a new IEP that is consistent with Federal and State law." 20 U.S.C. § 1414 (d)(2)(C)(i)(I).

## III. DISCUSSION

The parties agree that § 1415(j) governs the present dispute and L.N.'s "then-current education placement" under the stay-put provision is Rock Brook, as that was the "actually functioning" placement at the time Plaintiff filed her due process petition. (ECF No. 27 at 2, 4; ECF No. 28 at 1, 3.) Where the parties disagree is whether Plaintiff "otherwise agree[d]" to change

L.N.'s then-current educational placement under the stay-put provision, § 1415(j).[8] (ECF No. 21-1 at 10-16; ECF No. 23 at 4-13; ECF No. 28 at 3-4; ECF No. 31; ECF No. 32.) Section 1415(j) provides that "[d]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian *otherwise agree*, the child shall remain in the then current educational placement of such child[.]" (emphasis added). The Court will evaluate both the May 12, 2026 and July 14, 2026 IEPs to determine whether Plaintiff otherwise agreed to change L.N.'s educational placement from Rock Brook to South Amboy High School.

With regards to the May 12, 2026 IEP, emails in the record demonstrate that the District scheduled a meeting on May 7, 2026, with L.N.'s case manager communicating to Plaintiff that "[t]he court decision was made to transition [L.N.] back to South Amboy High School and this meeting is to discuss the process which will begin next week." (ECF No. 14 at 44.) The day of the meeting, Plaintiff indicated she was unavailable to attend.[9] (*Id.* at 44-48.) The District declined to reschedule the meeting, gave Plaintiff the option to attend virtually, and went ahead with the meeting, which Plaintiff did not attend. (*Id.* at 45-46.) After the meeting, L.N.'s case manager informed Plaintiff of the plan for L.N. to transition from Rock Brook to South Amboy High School,

---

8 Ordinarily, determining whether a change in placement occurred for purposes of stay-put "is something of an inexact science" and the touchstone of the analysis is whether the modification in question "is likely to affect in some significant way the child's learning experience" *In re Educ. Assignment of Joseph R.*, 318 F. App'x 113, 119 (3d Cir. 2009) (citation modified). The Court need not conduct such analysis here, where the parties do not dispute that there was a change in L.N.'s placement. (*See* ECF No. 21-1 at 5; ECF No. 23 at 5; ECF No. 31 at 1; ECF No. 32 at 1, 3.)

9 Plaintiff's emails to L.N.'s case manager are mostly in Spanish, and translation was not provided. However, context provided by the case manager's responses makes clear that Plaintiff repeatedly asked to reschedule the May 7 meeting in the morning before it was due to start. (ECF No. 14 at 52 (calendar invite showing the meeting was scheduled to begin at 11:00 a.m.); *id.* at 44-48 (emails from Plaintiff asking to reschedule on May 7, 2026 with timestamps of 8:39 a.m., 9:16 a.m., 10:14 a.m., 10:48 a.m., and 11:05 a.m.).)

and informed Plaintiff that "[t]he [D]istrict and Rockbrook are available on Tuesday, May 12, at 11:30 a.m. to hold [L.N.]'s annual review IEP meeting" and asked Plaintiff to confirm whether she would attend in person or virtually. (*Id.* at 49.) On May 11, 2026, L.N.'s case manager emailed Plaintiff that the IEP meeting was scheduled for May 12, 2026, at 11:30 a.m. (*Id.* at 55.) The record does not show Plaintiff responded to either email. At 11:51 a.m. on May 12, 2026, L.N.'s case manager emailed Plaintiff that "[w]e are all here at Rockbrook for [L.N.'s] annual review meeting. We have a Google Meet open for you to join." (*Id.* at 57.) Plaintiff did not reply until 4:14 p.m., stating, "You are doing whatever you please—and however you please—without consulting me at all. You are holding meetings, yet you only send me an email on the very day of the meeting. Did you know that what you are doing is illegal?" (*Id.*; *see also id.* at 65 (translations of Plaintiff's May 13, 2026 emails expressing that she never confirmed she was available for the May 12, 2026 meeting time).)

Based on the record before the Court, the Court does not find that Plaintiff consented to the May 12, 2026 IEP or otherwise agreed to change L.N.'s educational placement under the stay-put provision. *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005) ("Parents and guardians play a significant role in the IEP process."); *Montgomery Cnty. Intermediate Unit No. 23 v. A.F. by & through D.F.*, 506 F. Supp. 3d 293, 304 (E.D. Pa. 2020) (holding the IDEA requires that "there must be a process of written notice, parent consent, evaluation, creation and review of documents, and development of an IEP in conjunction with school staff and parents, all of which is known as the IEP process" (citation modified)). The Court finds the Third Circuit's decision in *W.B. v. Matula*, 67 F.3d 484 (3d Cir. 1995), *abrogated on other grounds by A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791 (3d Cir. 2007), instructive on this point. There, the plaintiff brought federal and state constitutional and statutory claims against school officials following the settlement of

administrative proceedings under the IDEA. *Id.* at 487-88. The district court dismissed the case based on a waiver of claims contained in the parties' settlement agreement and the Third Circuit reversed and remanded. *Id.* at 497-99. The court held that when considering the waiver of IDEA claims, the court will apply a "more searching standard[] reserved for waivers of civil rights claims, rather than general contract principles," which includes inquiring into "the totality of the circumstances surrounding execution of the agreement," and "declin[ing] to enforce the agreement unless its execution was knowing and voluntary." *Id.* at 497-98. The court explained that summary judgment in favor of the defendant was inappropriate because there was a factual dispute as to whether the settlement agreement was clear and specific as to a waiver of any damages claims and there was "certainly a factual dispute" as to whether the plaintiff understood the agreement. *Matula*, 67 F.3d at 498-99; *see also G.W. v. Ringwood Bd. of Educ.*, Civ. No. 19-13734, 2022 WL 17850251, *5-7 (D.N.J. Dec. 21, 2022) (applying *Matula* and denying summary judgment in favor of the defendant where there were disputed questions of material fact regarding whether parties' settlement agreement resolving the plaintiff's IDEA due process petition was entered into knowingly and voluntarily).

Here, it is undisputed that Plaintiff did not attend the May 12 meeting nor did Plaintiff consent to or sign the resulting IEP. It is also unclear from the contemporaneous correspondence whether Plaintiff was sent a copy of the May 12, 2026 IEP after that meeting. (ECF No. 14 at 44-59.) Also, there is no indication in the record that Plaintiff otherwise agreed to change L.N.'s educational placement based on the May 12 meeting. To the contrary, when Plaintiff was advised that L.N. would be moved from Rock Brook to South Amboy High School, Plaintiff expressed frustration that she was not being consulted and that what the District was doing was "illegal," (*id.* at 57), and that she "had no choice but to send [L.N. to South Amboy High School] because the

Board terminated [L.N.'s] placement at Rock Brook," (ECF No. 24 at 2). Thus, based on *Matula*'s more searching standard, the Court does not find that Plaintiff consented to the May 12, 2026 IEP or "otherwise agreed" to change L.N.'s educational placement under the stay-put provision.

Moreover, the stay-put provision is in effect for the *entirety* of the dispute process and that an aggrieved party "shall have 90 days from the date of the decision of the hearing officer" to initiate a civil action appealing the ALJ's decision. 20 U.S.C. § 1415(i)(2)(B); *see, e.g.*, *Ridley Sch. Dist.*, 744 F.3d at 124 (holding that section 1415(j) "states that the child shall remain in the current educational placement 'until *all* [IDEA] proceedings have been completed[.]'" (first alteration in original) (emphasis in original)); *Somerville Bd. of Educ.*, 2011 WL 32521, at *10 ("It is clear and we so find, that TCS was the operative placement actually functioning at the time the dispute first arose. We therefore conclude that it must remain the Stay Put Placement until the *entire case* is resolved either by agreement or further litigation." (citation modified)); *L.Y. ex rel. J.Y. v. Bayonne Bd. of Educ.*, 384 F. App'x 58, 61 (3d Cir. 2010) ("We have held that the current educational placement refers to the operative placement actually functioning at the time the dispute *first* arises." (emphasis added)). As of May 12, 2026, Plaintiff had yet to file her appeal and the 90-day appeal period had yet to run.

The Board cites no caselaw in support of its contention that the stay-put provision is lifted during the 90-day period between the final administrative decision and the deadline to appeal that decision. (ECF No. 23 at 8.) The Court also notes that such a reading would be at odds with the stay-put provision's purpose, which is "to strip schools of the *unilateral* authority they had traditionally employed to exclude disabled students, particularly emotionally disturbed students, from school." *Drinker*, 78 F.3d at 864 (citation modified). Therefore, the Court holds that the

District's May 12, 2026 IEP, effecting a change in L.N.'s placement on May 26, 2026, violated the stay-put provision as L.N.'s then-current educational placement was Rock Brook.[10]

Alternatively, Defendant argues that the stay-put provision does not entitle Plaintiff to the requested relief because on July 14, 2026, Plaintiff gave her signed consent to change L.N.'s educational placement to South Amboy High School. (ECF No. 23 at 1-2.) Plaintiff contends that she never agreed to a change in L.N.'s placement despite this signed form, because (1) she was not fully informed of all relevant information and the consent form is misleading, (2) she was not informed in her native language, (3) she did not understand the activity for which consent was sought, and (4) the consent form did not advise Plaintiff that her consent was revocable. (ECF No. 21-1 at 10-16.) The parties agreed that the material facts are undisputed, an evidentiary hearing is not required, and this Motion may be decided on the papers. (ECF No. 31 at 1; ECF No. 32 at 3.)

On July 14, 2026, Plaintiff signed a form titled "Consent to Implement Revised IEP Prior to 15 Days." (ECF No. 21-4.) The form was signed in relation to an IEP meeting the District held and Plaintiff attended on that date. (ECF No. 21-1 at 6-7; ECF No. 23 at 4.) The IEP states that the meeting was "a 30 day review meeting [] held to discuss [L.N.'s] progress at South Amboy High School." (ECF No. 22 at 33). As English is not Plaintiff's native language, an interpreter was provided for her at the meeting. (ECF No. 21-1 at 6; ECF No. 23 at 4.) It is also undisputed that Plaintiff was presented with the consent form *after* the IEP meeting was over, the interpreter

---

10 The Board also argues that this May 2026 change in placement was required by N.J. Admin. Code § 6A:14-2.7(*l*), which provides that "[t]he decision of the administrative law judge is final, binding on both parties, and to be implemented without undue delay unless stayed in accordance with N.J.A.C. 1:6A." (ECF No. 23 at 2, 8-9, 11-12.) However, the Board cites no caselaw holding that this "undue delay" requirement overrides the stay-put provision, and takes effect before the end of the 90-day period to appeal the ALJ's decision. Furthermore, the IDEA regulations provide that "[a] decision made in a hearing conducted pursuant to §§ 300.507 through 300.513 or §§ 300.530 through 300.534 is final, *except that any party involved in the hearing may appeal the decision* . 34 C.F.R. § 300.514(a) (emphasis added).

was no longer available, and the form was not translated into Spanish. (ECF No. 21-1 at 7, 14; ECF No. 32-1 ¶¶ 6-7.) Plaintiff represents that she did not read the form but signed it nonetheless because she understood her signature to mean only that "L.N. was receiving the same related services as she had at Rock Brook and that she was doing well with her related services," not that she consented to change L.N.'s stay put placement. (ECF No. 21-1 at 7.) The Board argues that Plaintiff's representation is not credible as Plaintiff previously reviewed IEP forms in English and was able to decide whether to sign or withhold consent, and "[t]here is no reason for Plaintiff to sign a form only for purposes of documenting the IEP team's discussion as to how L.N. was progressing in her related services" as Plaintiff is surely familiar with the IEP process. (ECF No. 32 at 1-2.)

The Court finds Plaintiff did not otherwise agree to change L.N.'s educational placement by signing the July 14, 2026 consent form. *Matula*, 67 F.3d at 498-99; *see also Drinker*, 78 F.3d at 868 (holding that an agreement to change a child's stay put placement must be "affirmative" and "explicit."); *J.E. v. Boyertown Area Sch. Dist.*, 807 F. Supp. 2d 236, 241 (E.D. Pa. 2011) (affirming agreement where parties "engaged in discussions" with each other regarding placement and did not "qualify[] their agreement or mak[e] any reference to an actual intent of not following the plan" for placement.); 20 U.S.C. §§ 1415(b)(3)-(4) (specifying that when an LEA proposes to change the "educational placement of the child" the LEA must provide written prior notice to the parents "in the native language of the parents, unless it clearly is not feasible to do so.").

The July 14, 2026 consent form does not address the stay put dispute. The form labeled, "Consent to Implement Revised IEP Prior to 15 Days," explains that "[t]his form is to be used for all IEPs that are developed after consent for the initial IEP has been provided." (ECF No. 21-4 at 2.) It further states that "[t]o have the IEP services start before the 15 days expire, you must

sign below" but even if a parent does not sign, "the IEP will be implemented after the 15th day from the date notice is provided."[11] (*Id.*) It is undisputed that Plaintiff never saw the July 14, 2026 IEP before signing the form, (ECF No. 21-1 at 7; ECF No. 22 at 3), at the meeting the parties only discussed "'how L.N. was doing at South Amboy High School' (i.e., the in-district placement that the IEP team previously recommended for L.N. and that was ordered through the March 2026 ALJ decision), including L.N.'s progress with respect to the IEP related services of speech-language therapy, occupational therapy, and physical therapy," and no one informed Plaintiff that her signature on the consent form would waive Plaintiff's right to challenge L.N.'s placement under the stay-put provision, (ECF No. 32 at 1-2, 3; ECF No. 32-1 ¶¶ 7, 9.) No interpreter translated the form for Plaintiff nor was one even available to her at the time the form was presented after the IEP meeting ended. (ECF No. 21-1 at 14; ECF No. 32-1 ¶ 6); 20 U.S.C. §§ 1415(b)(3)-(4) (requiring that written notice of a change in placement be provided in the parent's native language). The Board's argument that Plaintiff's contentions are not credible because she has attended other IEP meetings in the past and did not previously ask for forms to be translated into Spanish is unpersuasive. (ECF No. 32 at 1-2.) The record indicates Plaintiff did not explicitly consent to the July 14, 2026 IEP nor did Plaintiff waive her rights under the IDEA's stay-put provision. *See Drinker*, 78 F.3d at 868. Thus, L.N.'s operative placement at the time the dispute arose between the parties was Rock Brook as set forth in L.N.'s East Windsor Township School District IEP that

---

[11] The consent form also states that in signing the form, the parent or guardian agrees that they have "received a copy of the proposed IEP and agree to have the IEP services start before the 15 calendar days have expired." (ECF No. 21-4 at 2.) Plaintiff contends that she never saw the July 14, 2026 IEP before signing this form, (ECF No. 21-1 at 7), which is supported by the record which shows the IEP was sent to Plaintiff on July 20, 2026, (ECF No. 22 at 3), after the form was already signed.

the District adopted for the 2024-2025 school year upon L.N.'s enrollment. (ECF No. 27 at 3; ECF No. 28 at 3.)

Lastly, Defendant argues that the purpose of the stay-put rule would be frustrated if the Court ordered L.N. to be placed back at Rock Brook, because that would disrupt L.N.'s education which she is currently receiving at South Amboy High School. (ECF No. 23 at 12-13.) The Court notes that while it is well-established that the stay-put provision seeks to preserve the status quo, the status quo "refers to the operative placement actually functioning at the time the dispute first arises," which in this case was Rock Brook. *Rena C. v. Colonial Sch. Dist.*, 890 F.3d 404, 415 (3d Cir. 2018). L.N. is entitled to return to Rock Brook for the pendency of this appeal unless Plaintiff expressly agrees to a mutually acceptable alternative.

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, Plaintiff's Motion for a Preliminary Injunction, (ECF No. 21) is **GRANTED**. An appropriate Order follows.

Dated: October 15, 2026

Georgette Castner

**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**